# Exhibit "D"

**CERTIFIED COPY**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRUCE ALBERT JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) Case Number |
| | ) 5:12-CV-01091-LHK-PSG |
| | ) |
| CFS II, INC., an Oklahoma | ) |
| corporation, | ) |
| | ) |
| Defendant. | ) |

VIDEOTAPED DEPOSITION OF BRYAN R. LOHMEYER, taken on behalf of the Plaintiff, on the 6th day of November, 2012, pursuant to Federal Rules of Civil Procedure 30(b)(6), between 1:11 p.m. and 3:28 p.m., at 9 East Fourth Street, Suite 902, Tulsa, Oklahoma, before Michele Vest, a Certified Shorthand Reporter in and for the State of Oklahoma.

APPEARANCES:

For the Plaintiff:    MR. FRED W. SCHWINN
Consumer Law Center, Inc.
2 South First Street
Suite 1014
San Jose, California 95113-2418
(408) 294-6100

For the Defendant:    MS. SAUNDRA BURRUS-GRIMES
Compliance Counsel for CFS II
2488 E. 81st Street
Suite 500
Tulsa, Oklahoma 74137
(918)394-3950

Videographer:    MR. MATTHEW SALMONSEN



**MAXENE WEINBERG AGENCY**
*Litigation Support From Opening to Verdict*
800-640-1949 | www.mwadepos.net

```
 1              MR. SCHWINN:  Would the court reporter,      13:13:20

 2        please, swear in the witness.

 3                   BRYAN R. LOHMEYER,

 4     after having been first duly sworn to tell the truth, the

 5     whole truth, and nothing but the truth, testified as

 6     follows:

 7                   DIRECT EXAMINATION

 8     BY MR. SCHWINN:

 9     Q    Again, would you please state your name for the court

10          reporter and the record.                          13:13:34

11     A    Bryan Richard Lohmeyer.

12     Q    Would you spell your last name, please.

13     A    L-o-h-m-e-y-e-r.

14     Q    And please give us your address.

15     A    2488 East 81st Street.  Suite 500, Tulsa, Oklahoma  13:13:43

16          74137.

17     Q    And who is your employer?

18     A    CFS II.

19     Q    Okay.  And you are the designated witness for today's

20          deposition?                                        13:14:00

21     A    Yes, sir.

22                   (WHEREUPON, Exhibit No. 1 was marked

23               for identification purposes.)

24     Q    Okay.  Let me hand you what the court reporter has

25          previously marked Exhibit 1.  If you will quickly   13:14:04
```

Page 4

| | | | |
|---|---|---|---|
| 1 | Q | And then the next entry going up the page, could you | 13:31:14 |
| 2 | | read that to us? | |
| 3 | A | Ashley Muglia -- oh, Muglia Ashley 1/17/2010 -- 2011 | |
| 4 | | 9:59 second notice sent. | |
| 5 | Q | Okay.  What is -- what's happening in this line? | 13:31:31 |
| 6 | A | That is our second notice letter that we sent out. | |
| 7 | | And Ashley was one of the -- she worked in the loan | |
| 8 | | servicing area.  She's the one that sent it out. | |
| 9 | Q | Have you seen a copy of this second notice letter? | |
| 10 | A | I've seen one that was dated -- I saw one that was -- | 13:31:56 |
| 11 | | was that the one that was dated three -- | |
| 12 | Q | You're the witness. | |
| 13 | A | I don't know. | |
| 14 | | MS. GRIMES:  I'll look. | |
| 15 | A | I have not. | 13:32:07 |
| 16 | Q | (By Mr. Schwinn) Okay.  Let's go through some | |
| 17 | | exhibits then. | |
| 18 | | MR. SCHWINN:  Let's mark this the next in | |
| 19 | | line. | |
| 20 | | MS. GRIMES:  Do you not have a copy of the | |
| 21 | | June 17th letter? | |
| 22 | | MR. SCHWINN:  I don't.  I have what's been | |
| 23 | | produced in discovery.  You said there's no | |
| 24 | | further document production so we're going with | |
| 25 | | the ones I have.  Okay, that's for her. | 13:32:13 |

Page 16

| | | |
|---|---|---|
| 1 | | the letter is in the actual CFS II system. | 13:35:11 |
| 2 | Q | Okay. |
| 3 | A | But it was not documented by the lady who sent the |
| 4 | | letter out. |
| 5 | Q | So Exhibit 2 is not the documents from the CFS II | 13:35:20 |
| 6 | | system? |
| 7 | A | Exhibit 2, this one here?  The -- this letter? |
| 8 | | MS. GRIMES:  This one is two. |
| 9 | A | Oh, I'm sorry, yeah.  This is a CFS II system, but we |
| 10 | | have a correspondence area in the system where we put | 13:35:38 |
| 11 | | any correspondence that's mailed out.  The |
| 12 | | correspondence does not take -- not back then, it was |
| 13 | | not in the -- it was not -- it was updated into the |
| 14 | | system when we got a copy of this letter into the |
| 15 | | correspondence tab of the system, but it was not in | 13:35:53 |
| 16 | | the -- put in the comments. |
| 17 | Q | (By Mr. Schwinn) So is it your testimony that there |
| 18 | | are -- there is data and evidence in CFS computers -- |
| 19 | | CFS's computer system that is not reflected on |
| 20 | | Exhibit 2 -- | 13:36:20 |
| 21 | A | Yes. |
| 22 | Q | -- with regard to this account? |
| 23 | A | Yes, sir. |
| 24 | Q | I refer you back to Exhibit 1 on page 2.  Item number |
| 25 | | five, if you would please read that. | 13:36:34 |

Page 19

| | | | |
|---|---|---|---|
| 1 | A | All account notes, collection logs, miscellaneous | 13:36:37 |
| 2 | | notes, debtor work cards, or other documentation | |
| 3 | | methods, if any, whether computerized manually -- | |
| 4 | | whether computerized manual or other, of all | |
| 5 | | activities undertaken by CFS or its employees related | 13:36:51 |
| 6 | | to Plaintiff. | |
| 7 | Q | Do you believe that the system notes that you're | |
| 8 | | talking about that are not part of Exhibit 2 would be | |
| 9 | | included, would be described by number five? | |
| 10 | A | Yes, sir. | 13:37:06 |
| 11 | Q | Okay.  But they haven't been produced? | |
| 12 | | MS. GRIMES:  Yes, they have.  Objection. | |
| 13 | Q | (By Mr. Schwinn) Okay.  Please, show me them. | |
| 14 | | MS. GRIMES:  In discovery they were produced. | |
| 15 | | MR. SCHWINN:  Okay.  We can stop and you can | 13:37:16 |
| 16 | | show me those if you would because we do not have | |
| 17 | | anything other than Exhibit 2. | |
| 18 | | MS. GRIMES:  I didn't bring discovery with | |
| 19 | | me.  We sent it to your office through our | |
| 20 | | attorney in California. | 13:37:29 |
| 21 | | MR. SCHWINN:  I will represent that Exhibit 2 | |
| 22 | | is the full extent of what we've been given, and | |
| 23 | | that's why it's important that we go over Exhibit | |
| 24 | | 2. | |
| 25 | Q | (By Mr. Schwinn) Okay.  If there's additional | 13:37:37 |

Page 20

| | | |
|---|---|---|
| 1 | | documents that have not been previously produced and | 13:37:40 |
| 2 | | are not being produced at the deposition, then we | |
| 3 | | will adjourn the deposition at the end and we'll | |
| 4 | | reconvene at such later date when we get additional | |
| 5 | | exhibits.  But for now, we'll keep going. | 13:37:53 |
| 6 | A | Okay. | |
| 7 | Q | Back on the -- back on Exhibit 2.  Actually, on | |
| 8 | | Exhibit 3.  The name on the letter on the bottom of | |
| 9 | | Exhibit 3 is Damon Baldridge; is that correct? | |
| 10 | A | Yes, sir. | 13:38:14 |
| 11 | Q | And I also note in -- on the bottom of page 4 in | |
| 12 | | Exhibit 2, Damon Baldridge's name does not appear. | |
| 13 | | Would that be consistent with your previous testimony | |
| 14 | | that this letter is not reflected in Exhibit 2? | |
| 15 | A | Yes.  Yes. | 13:38:32 |
| 16 | Q | So you believe that there are missing entries between | |
| 17 | | whatever the beginning of the collection efforts were | |
| 18 | | and August 17th, 2011? | |
| 19 | A | Yes, sir. | |
| 20 | Q | And it was because prior to that date or somewhere | 13:38:50 |
| 21 | | around that date it wasn't part of CFS' procedure to | |
| 22 | | log all the letters in the notes? | |
| 23 | A | Yes, sir. | |
| 24 | Q | Okay.  But after that date it was part of the | |
| 25 | | procedure to log the letters? | 13:39:10 |

Page 21

Maxene Weinberg Agency
(800) 640-1949

| | | |
|---|---|---|
| 1 | A | Right. |
| 2 | Q | And is this procedure in writing? |
| 3 | A | The procedure, yes, it is in writing. |
| 4 | Q | Okay.  And has that procedure been provided? |
| 5 | | MS. GRIMES:  If it was requested in |
| 6 | | discovery. |
| 7 | | MR. SCHWINN:  Okay.  It was requested in |
| 8 | | discovery and I will represent that it has not |
| 9 | | provided.  And so again, we will ask that that be |
| 10 | | provided.  And if we have further questions, we |
| 11 | | will reconvene at a later time. |
| 12 | Q | (By Mr. Schwinn) We'll make a list for you of the |
| 13 | | additional documents. |
| 14 | A | Okay. |
| 15 | | MR. SCHWINN:  So let's mark this next one. |
| 16 | | Let's mark this other one.  What number are we up |
| 17 | | to? |
| 18 | | THE COURT REPORTER:  Five. |
| 19 | | (WHEREUPON, Exhibit No. 5 was marked |
| 20 | | for identification purposes.) |
| 21 | Q | (By Mr. Schwinn) Okay.  I'm handing you now what's |
| 22 | | been marked Exhibit No. 5.  Have you seen this |
| 23 | | document before? |
| 24 | A | Not till today. |
| 25 | Q | Okay.  Do you recognize this document? |

13:39:11

13:39:21

13:39:31

13:39:40

13:40:09

Page 22

| | | | |
|---|---|---|---|
| 1 | | MS. GRIMES:  I think he's got them backwards. | 14:02:06 |
| 2 | A | Sorry.  The DCC -- the FDCPA is, This is an attempt | |
| 3 | | to collect a debt.  Any information obtained is used | |
| 4 | | for that purpose and call can be monitored or | |
| 5 | | recorded for quality assurance purposes. | 14:02:14 |
| 6 | | The DCC is just letting them know that the | |
| 7 | | calls -- the QAD is calls can be recorded and DCC is | |
| 8 | | just letting them know that we're a debt collection | |
| 9 | | company and I'm a debt collector. | |
| 10 | Q | These are scripts that are read? | 14:02:32 |
| 11 | A | No.  They have it memorized. | |
| 12 | Q | Okay.  There is a procedure for this? | |
| 13 | A | Yes, sir. | |
| 14 | Q | Has that procedure been provided? | |
| 15 | | MS. GRIMES:  It has through discovery. | 14:02:42 |
| 16 | | MR. SCHWINN:  It hasn't.  So I'll represent | |
| 17 | | to you that it has not been provided and we would | |
| 18 | | ask for that.  Okay. | |
| 19 | Q | (By Mr. Schwinn) QAD is noting that the calls can be | |
| 20 | | recorded? | 14:02:55 |
| 21 | A | Are recorded.  Calls are recorded. | |
| 22 | Q | Okay.  Are the calls recorded? | |
| 23 | A | Yes, sir. | |
| 24 | Q | Do you have the recording for this call? | |
| 25 | A | I'm sure we do, yes.  Every call is recorded. | 14:03:02 |

Page 38

Maxene Weinberg Agency
(800) 640-1949

| | | |
|---|---|---|
| 1 | Q | The next entry up, Jessica Scoggins, June 6th, 2011, |
| 2 | | 12:00 a.m.   Second letter sent via U.S. mail.  Do you |
| 3 | | see that? |
| 4 | A | Yes. |
| 5 | Q | Who's Jessica Scoggins? |
| 6 | A | Jessica Scoggins is -- she's the manager of loan |
| 7 | | servicing. |
| 8 | Q | And as a manager she's sending out letters? |
| 9 | A | She will occasionally. |
| 10 | Q | Did Ashley work for her? |
| 11 | A | Yes. |
| 12 | Q | Have you seen a copy of the June 6th letter? |
| 13 | A | I have not. |
| 14 | | MR. SCHWINN:  I don't believe it's been |
| 15 | | produced in discovery either so.  I would ask that |
| 16 | | it be produced. |
| 17 | | MS. GRIMES:  I was just saying the June 6th |
| 18 | | letter.  I am making a note of the things that |
| 19 | | he's requesting. |
| 20 | Q | (By Mr. Schwinn) As you -- I would like for you now |
| 21 | | to look up -- look up through the remainder of the |
| 22 | | notes and see if there's anymore letters that were |
| 23 | | sent according to the notes after June 6th, 2011. |
| 24 | A | 10/31/2011, Ashley Muglia.  We sent a settlement |
| 25 | | letter that the customer agreed to pay.  We sent it |

14:16:32

14:16:46

14:17:17

14:17:48

14:18:10

14:19:16

Page 48

| | | | |
|---|---|---|---|
| 1 | | via email.  It was not mailed. | 14:19:20 |
| 2 | Q | So what email address was that sent? | |
| 3 | A | I don't believe we put the email address in the | |
| 4 | | comments.  They have to email us first and then we | |
| 5 | | email them the information, so I don't know. | 14:19:48 |
| 6 | Q | Okay. | |
| 7 | A | There's one there.  There it is.  It's right there. | |
| 8 | Q | In the 10/27 note? | |
| 9 | A | Yeah.  Myulendog@yahoo.com. | |
| 10 | Q | Okay.  I would like to jump back. | 14:20:17 |
| 11 | A | That's all the letters I see. | |
| 12 | | (WHEREUPON, Exhibit No. 7 was marked | |
| 13 | | for identification purposes.) | |
| 14 | Q | I missed a letter.  This is Deposition Exhibit No. 7. | |
| 15 | | And this is Deposition Exhibit No. 6.  I want to put | 14:20:44 |
| 16 | | those side by side.  To me they appear to be the same | |
| 17 | | letter.  Do you believe them to be the same letter? | |
| 18 | A | Yes, sir. | |
| 19 | Q | I'll represent to you that Exhibit 6 was produced by | |
| 20 | | CFS in discovery, and Exhibit 7 is the copy of the | 14:21:03 |
| 21 | | document that was received by my client, Bruce | |
| 22 | | Johnson.  There are a number of additional pages | |
| 23 | | behind the first page on Exhibit 7.  Could you review | |
| 24 | | those? | |
| 25 | A | (Witness complies.) Okay. | 14:21:24 |

Page 49

| | | |
|---|---|---|
| 1 | | and find out the dates on which it changed from one | 14:43:08 |
| 2 | | status to another and who it was that changed the |
| 3 | | status? |
| 4 | A | I can get to a screen in CFS that will show me the |
| 5 | | history of each account and the status, yes. | 14:43:21 |
| 6 | Q | The current status, but I'm talking about the |
| 7 | | historic status and dates it was changed? |
| 8 | A | Yes, that's exactly what I meant. |
| 9 | Q | But there's no report available that you know of that |
| 10 | | contains that information? | 14:43:33 |
| 11 | A | I can ask Nancy and she can print us out a report. |
| 12 | | If I ask that she's going to yell and scream, but |
| 13 | | she'll print the report out. |
| 14 | Q | Well, I believe that all data with regard to this |
| 15 | | account has been requested in discovery.  And I | 14:43:45 |
| 16 | | believe that the dates on which statuses were |
| 17 | | changed, any additional information that's in CFS' |
| 18 | | system is responsive to that discovery. |
| 19 | | And I'll just tell you that this isn't the first |
| 20 | | -- this isn't the first debt collection case I've | 14:44:02 |
| 21 | | ever had.  And those notes are incredibly sparse for |
| 22 | | what I usually get in discovery.  They just do not |
| 23 | | contain hardly any information, information that I |
| 24 | | would expect to receive in collection logs. |
| 25 | | So let's continue.  The next line up is Stacey | 14:44:19 |

Page 60

| | | |
|---|---|---|
| 1 | | Crain on August 10th, 2011, 12:53, additional notes. | 14:44:29 |
| 2 | | Verification equals US Bank statements from 2008 to | |
| 3 | | 2010; is that what that says? | |
| 4 | A | Yes. | |
| 5 | Q | Is this the media that's coming back? | 14:44:42 |
| 6 | A | Yes. | |
| 7 | Q | So are we talking about three years' worth of | |
| 8 | | statements, 36 monthly statements? | |
| 9 | A | Yes. | |
| 10 | Q | And those would be received from CFS from NLEX? | 14:44:55 |
| 11 | A | Yes. | |
| 12 | Q | Any idea how NLEX comes to acquire them? | |
| 13 | A | Through US Bank. | |
| 14 | Q | Do you have any knowledge of that? | |
| 15 | A | I don't know how else -- that's how we get our data | 14:45:09 |
| 16 | | is through NLEX who requests it from US Bank. | |
| 17 | Q | Okay.  And then the next item is Stacey Crain, | |
| 18 | | August 16th, 2011, 9:11 a.m., received August 15th, | |
| 19 | | 2011, from NLEX, media request, affidavit of claim, | |
| 20 | | and what cert of amount due? | 14:45:36 |
| 21 | A | Certification of amount due. | |
| 22 | Q | Okay.  This is about a week later.  What is happening | |
| 23 | | here? | |
| 24 | A | That's just the original -- that's the original | |
| 25 | | affidavit that we request for the customers also to | 14:45:51 |

Page 61

Maxene Weinberg Agency
(800) 640-1949

| | | |
|---|---|---|
| 1 | | show that it is now our account or our students | 14:45:53 |
| 2 | | account. | |
| 3 | Q | Okay. | |
| 4 | A | It's just something with additionally with the bank | |
| 5 | | statements. | 14:46:03 |
| 6 | Q | And this would be paper document signed in ink? | |
| 7 | A | Yes. | |
| 8 | | MR. SCHWINN:  I would request that that be | |
| 9 | | produced.  It's not been produced in discovery. | |
| 10 | | MS. GRIMES:  Which one are you asking for? | 14:46:12 |
| 11 | | THE WITNESS:  The affidavit. | |
| 12 | | MR. SCHWINN:  The affidavit of debt, | |
| 13 | | certificate amount due. | |
| 14 | | MS. GRIMES:  So all of the verification then? | |
| 15 | | THE WITNESS:  Right. | 14:46:18 |
| 16 | | MR. SCHWINN:  Every piece of document, every | |
| 17 | | piece of information that CFS has with regard to | |
| 18 | | this account, every audio recording.  The | |
| 19 | | discovery request is pretty broad.  It's the same | |
| 20 | | as number five in the discovery notice.  It's very | 14:46:32 |
| 21 | | broad. | |
| 22 | Q | (By Mr. Schwinn) Okay.  The next item is August 16th, | |
| 23 | | 2011, 5:06 p.m.  This looks to me to be a telephone | |
| 24 | | call. | |
| 25 | A | Yes. | 14:46:47 |

Page 62

```
 1   Q    Could you read the 5:06 p.m.?                          14:47:51

 2   A    DCC given, FDCPA given to XXXXXX, QAD given.  Said

 3        there is no way to pay for them, said husband is 76

 4        years old and she is 75 and nothing she can do --

 5        nothing she can do.  Husband makes 1,200 a month on    14:48:10

 6        pension and gets SSI.  Said would talk to husband,

 7        offered settlement, said nothing offered -- said

 8        nothing, offered $60 a month, said going to talk to

 9        husband and offer mail in.  Said will call us back

10        and I had to end call, ended call -- ended call.       14:48:26

11   Q    Okay.  So the caller is the wife.  And she says she's

12        75.  The husband is 76.  He gets 1,200 a month in

13        pension.  She gets SSI.  And in response to that the

14        collector offers them a $69 a month collection for

15        this debt?                                             14:48:59

16   A    Yes.

17   Q    The next line up is 5:07.  Per comments, incoming, I

18        spoke with wife.  That goes with the entry below?

19   A    Yes, sir.

20   Q    The next entry is on September 7th.  Do you see that?  14:49:18

21   A    Yes, sir.

22   Q    Could you tell me -- read this one to us.

23   A    Stolusky Kathy, 9/7/2011, 2:22 p.m. (408)779-4656,

24        to wife said nothing she can do.  DCC given, FDCPA

25        given to X out, QAD given, said she just barely        14:49:44
```
                                                          Page 64

| | | |
|---|---|---|
| 1 | | making it.  Lives in a mobile home and the one and | 14:49:50 |
| 2 | | 1,500 -- and on the first -- I don't know what this | |
| 3 | | is.  And 1,500 for rent, 500 medical, husband is 76, | |
| 4 | | said she has struggled, she refuses to pay, RPC, | |
| 5 | | refusal to pay. | 14:50:12 |
| 6 | Q | Okay.  So DCC given, FDCPA given, QAD given.  This is | |
| 7 | | an outbound call that was recorded? | |
| 8 | A | Yes. | |
| 9 | | MR. SCHWINN:  I ask for the recording. | |
| 10 | Q | (By Mr. Schwinn) And the one that we talked about | 14:50:28 |
| 11 | | before with Kathy Stolusky on August 16th, again, | |
| 12 | | that's a recorded call as well? | |
| 13 | A | The inbound call? | |
| 14 | Q | Yeah, the inbound call, QAD given. | |
| 15 | A | Yes. | 14:50:42 |
| 16 | | MR. SCHWINN:  Again, I ask for the recording | |
| 17 | | on that. | |
| 18 | Q | (By Mr. Schwinn) She refuses to pay.  Is there a | |
| 19 | | procedure at CFS when a debtor says they refuse to | |
| 20 | | pay? | 14:51:01 |
| 21 | A | There is -- if it's a refused to pay we'll, you know, | |
| 22 | | probably be a little leary of that account, but | |
| 23 | | there's not really a procedure.  It's usually up to | |
| 24 | | the CC's discretion. | |
| 25 | Q | So nothing about refuses to pay would have altered | 14:51:26 |

Page 65

Maxene Weinberg Agency
(800) 640-1949

```
 1        the way in which CFS attempted to collect this        14:51:29

 2        account?

 3   A    Sometimes they refuse just to discuss it at that

 4        time.  And I don't know if that's what happened in

 5        this particular case.  It would probably be better to  14:51:40

 6        listen to it.  I can't -- I mean, a lot of times they

 7        refuse just to talk that day, call back in 30 days.

 8        I'd have to listen to the call.

 9   Q    Okay.  So the next line up, it appears the next

10        call -- the next call went out a week later?           14:51:59

11   A    Yes, sir.

12   Q    August 13th, 2011, 2:53 p.m.  This is an outbound

13        call.  An answering message picked it up.  And a

14        message was left on the answering machine?

15   A    Yes.                                                   14:52:18

16   Q    Are those recorded?

17   A    Yes.

18             MR. SCHWINN:  Okay.  I ask for that recording

19        as well.

20   Q    (By Mr. Schwinn) The next is a lengthy entry.  Again,  14:52:24

21        a week later on September 21st, 2011, at 5:53 p.m.;

22        is that correct?

23   A    Yes, sir.

24   Q    Okay.  Is this an outbound call?

25   A    Yes.                                                   14:52:56
```

Page 66

| | | | |
|---|---|---|---|
| 1 | Q | Okay.  And it would be recorded? | 14:52:57 |
| 2 | A | Yes, sir. | |
| 3 | | MR. SCHWINN:  I ask for the recording. | |
| 4 | Q | (By Mr. Schwinn) I notice that there is a | |
| 5 | | considerable amount of narrative, and then it says | 14:53:06 |
| 6 | | DCC given, FDCPA given, QAD given.  What's the | |
| 7 | | procedure for giving these disclosures? | |
| 8 | A | The -- 99 percent of the time they'll give the | |
| 9 | | disclosure at the very beginning of the conversation. | |
| 10 | Q | Is that a written policy? | 14:53:26 |
| 11 | A | Yes.  Yes, sir. | |
| 12 | Q | Has that written policy been produced in discovery? | |
| 13 | A | I don't think so. | |
| 14 | Q | I don't believe it has either. | |
| 15 | | MR. SCHWINN:  I would ask that it be | 14:53:42 |
| 16 | | produced. | |
| 17 | Q | (By Mr. Schwinn) Could you read this call note and | |
| 18 | | tellus what's going on here? | |
| 19 | A | Talked to Kathy Stolusky.  He read the number, 9/21, | |
| 20 | | talked to customer, talked to wife, said can't -- | 14:53:55 |
| 21 | | talked to customer, talked to wife, said can't pay. | |
| 22 | | Talked to bit built rapport, said customer had stroke | |
| 23 | | that's why they stopped paying, said husband was | |
| 24 | | working, now he isn't, bad health, said attorney is | |
| 25 | | doing cease and assist, said gets paid two times a | 14:54:10 |

Page 67

```
 1   Q   Does CFS ask what's the name of your attorney and     14:55:45

 2       what's his phone number?

 3   A   Yes, sir.

 4   Q   Was that done on this phone call?

 5   A   Again, you'll probably have to listen to the phone     14:55:52

 6       call.

 7   Q   Is there anything in the call notes to indicate that

 8       an inquiry was made of the debtor's wife regarding an

 9       attorney?

10   A   Not that I see.  No.                                   14:56:03

11   Q   And that would be inconsistent with CFS' policies if

12       that's actually the case when we listen to the

13       recording?

14   A   Sometimes it's a judgment call.  It depends on what's

15       on that recording.                                     14:56:19

16   Q   So there's times when the debtor can say we have an

17       attorney doing cease and assist for us, and it would

18       be okay if they didn't follow up by asking who the

19       attorney is and the scope of the representation?

20   A   I don't think that would be okay, no.                  14:56:36

21   Q   If that in fact is what happened would that violate

22       CFS' policies?

23   A   I would have to listen to the call.

24   Q   Are the policies for such things in writing for the

25       collectors?                                            14:56:56
```

Page 69

| | | | |
|---|---|---|---|
| 1 | A | We have written policies, yes. | 14:56:56 |
| 2 | | MR. SCHWINN:  I would ask that those policies | |
| 3 | | be produced. | |
| 4 | Q | (By Mr. Schwinn) Moving up, the bottom of the second | |
| 5 | | page.  Can you tell us what's happening in this first | 14:57:08 |
| 6 | | entry? | |
| 7 | A | The first entry, Stolusky Kathy, 9/24/2011, 10:25 | |
| 8 | | a.m.  RPC no promise.  I believe that's going back -- | |
| 9 | Q | To the call three days before? | |
| 10 | A | I'm not sure why she put RPC no promise on that one, | 14:57:32 |
| 11 | | I don't know.  I don't -- I don't see any other | |
| 12 | | comments.  And you're right, it's three days.  I | |
| 13 | | don't know. | |
| 14 | Q | From these notes? | |
| 15 | A | Usually, if it's RPC it means they talked to | 14:57:48 |
| 16 | | somebody, so I don't know. | |
| 17 | Q | Does this entry indicate that they talked to | |
| 18 | | somebody? | |
| 19 | A | There's no -- unless we're missing something between | |
| 20 | | the two pages which I don't see, it looks like I | 14:57:59 |
| 21 | | don't see any conversation unless they were trying -- | |
| 22 | | maybe she may have been putting RPC on there so we | |
| 23 | | don't call her back.  I don't know.  I don't know. | |
| 24 | | Usually if you put RPC in there then it waits three | |
| 25 | | or four days before it calls the account again, or | 14:58:21 |

Page 70

Maxene Weinberg Agency
(800) 640-1949

| | | |
|---|---|---|
| 1 | | whatever day you put in there. | 14:58:23 |
| 2 | Q | The RPC code then you can date it with a tickle date |
| 3 | | for another call? |
| 4 | A | Yes, sir. |
| 5 | Q | But from this note you can't really tell what | 14:58:31 |
| 6 | | happened? |
| 7 | A | No. |
| 8 | Q | Okay.  But there would be some screen shot or |
| 9 | | something in the CFS system which would give us more |
| 10 | | detail about this? | 14:58:42 |
| 11 | A | Should, yes. |
| 12 | | MR. SCHWINN:  I ask that that be produced. |
| 13 | | MS. GRIMES:  Which are you talking about? |
| 14 | | MR. SCHWINN:   Whatever it is that goes with |
| 15 | | this entry. | 14:58:50 |
| 16 | | THE WITNESS:  He wants to know what we have |
| 17 | | that could show that entry. |
| 18 | | MS. GRIMES:  Which entry? |
| 19 | | THE WITNESS:  9/24 -- if I can speak, |
| 20 | | 9/24/2011, 10:25 a.m.  RPC no promise. | 14:58:56 |
| 21 | Q | (By Mr. Schwinn) It's an example of what I'm looking |
| 22 | | for.  There's -- that's not just the one I'm looking |
| 23 | | for.  There's a bunch of -- there's a bunch of stuff |
| 24 | | that's missing here. |
| 25 | | MS. GRIMES:  These are the complete comments | 14:59:13 |

Page 71

```
 1       out of the system.  There's nothing missing from      14:59:15

 2       these.

 3    Q  (By Mr. Schwinn) The next entry up, could you tell us

 4       what that is and what's going on?

 5    A  Stolusky Kathy, 9/28/2011, 7:08 p.m., phone number,     14:59:26

 6       DCC, QAD, FDCPA given to wife, said nothings changed,

 7       she'd let me get my disclosure -- she let me get my

 8       disclosures then the call ended.

 9    Q  This was recorded?

10    A  (Witness nods head.)                                    14:59:44

11    Q  The outbound call was recorded?

12    A  Yes, sir.  Yes.

13           MR. SCHWINN:   I'd ask for the recording.

14    Q  (By Mr. Schwinn) And then the next one up appears to

15       go with this same entry, the same person, same date,   14:59:57

16       same time, per complaints RPC refusal.  What's that

17       indicate?

18    A  I do not know.

19    Q  RPC would be right person contacted?

20    A  Right, that is correct.  Right person contacted        15:00:15

21       refusal.  She may have been reviewing previous

22       comments and just looked at the account and reviewed

23       the account and then didn't -- well, actually, it's

24       the same time.  It goes down to below -- she just

25       added comments to the -- on a separate line to this.   15:00:33
```

Page 72

|     |     |     |     |
| --- | --- | --- | --- |
| 1   | A   | Okay. | 15:02:06 |
| 2   | Q   | So 10/27/2011, 7:33 p.m.  Is this an outbound | |
| 3   |     | telephone call? | |
| 4   | A   | Yes. | |
| 5   | Q   | And is it recorded? | 15:02:17 |
| 6   | A   | Yes. | |

7           MR. SCHWINN:   I ask for the recording.

8    Q    (By Mr. Schwinn) Could you read this note and tell us

9         what's happening here.

10   A    Sure.  Email address, customer said again can't do          15:02:25

11        anything.  This is what she's been telling me, told

12        her could do a settlement I will allow her to pay it

13        out over 20 months.  She stated they can only afford

14        about 50 to 75.  I gave her a settlement offer of

15        2,173.  Would make payments around 110 or so.  Asked          15:02:42

16        for something in October.  She said she could only do

17        50.  Told her fine, we'll take the October 28th --

18        will take October 28th, she agreed.  Total after 50

19        payments for the 25th of each month starting

20        November 25th paying $50 for October, did HCH for 20          15:02:59

21        months, first pay $50, 19 others at 111.74.  Put in a

22        do a deal that to get verified, customer lives

23        paycheck to paycheck, many conversations with her,

24        lives in California, says maybe has a 150 left over,

25        her son is ill and having all kinds of issues with            15:03:23

Page 74

```
 1   Q    And all of this is being done at the same time        15:06:07

 2        Ms. Johnson is on the telephone?

 3   A    Yes, sir, we do that with every customer.  We have to

 4        make sure the deal is verified.

 5   Q    So the deal data verified the first -- the first one   15:06:16

 6        done by Sabra?

 7   A    Sabra, uh-huh.

 8   Q    This is making sure that CFS will agree to the deal?

 9   A    It's a manager okaying the deal is what it is.

10   Q    On CFS' behalf?                                        15:06:33

11   A    Right.   Right.

12   Q    And then Sarah Beth Parrish, she is in the

13        verification department, and she's going to verify

14        the deal with the customer?

15   A    Right, verifies everything, the customer agrees to    15:06:44

16        the $50 and the $111.  She restates the whole deal to

17        the customer.

18   Q    Okay.  Is the entry from Sabra that's -- is there --

19   A    That's an entry in the system.

20   Q    She wasn't on phone?                                  15:06:57

21   A    No, but -- and that's where I made the mistake.

22        Sarah Parrish that call was recorded.

23   Q    Okay.  So then Sarah Parrish gets on the very same

24        phone call?

25   A    It's transferred to her, yes, sir.                    15:07:07
```

Page 77

| | | | |
|---|---|---|---|
| 1 | Q | Transferred or is it a three way? | 15:07:09 |
| 2 | A | No, it's transferred.  Well, it's a three way and | |
| 3 | | then it's dropped to Sarah.  The CC does the three | |
| 4 | | way. | |
| 5 | Q | So that would be a separate recording? | 15:07:15 |
| 6 | A | It should be.  It might all be one, but, yeah, it | |
| 7 | | will be -- either way it will right near the same | |
| 8 | | time on the recordings. | |
| 9 | | MR. SCHWINN:  Okay.  I'd like to have that | |
| 10 | | recording. | 15:07:26 |
| 11 | Q | (By Mr. Schwinn) And then the next entry says, Kathy | |
| 12 | | funding source created 10/27/2011 at 7:26 p.m. | |
| 13 | | What's happening here | |
| 14 | A | That's just if -- that's where if you have a funding | |
| 15 | | source that means it's a check by phone or credit | 15:07:42 |
| 16 | | card or it's something that we have, not a mail in. | |
| 17 | | If it was just a mail in we wouldn't have anything | |
| 18 | | there. | |
| 19 | Q | Okay.  Are there any special procedures at CFS when | |
| 20 | | dealing with people of advanced age 75, 76 years old? | 15:07:58 |
| 21 | A | We have a whole large portfolio of people in nursing | |
| 22 | | homes we don't call.  We put them separate.  We will | |
| 23 | | do that with people overseas, and we have a nursing | |
| 24 | | home portfolio. | |
| 25 | Q | And you don't collect on nursing home portfolio? | 15:08:21 |

Page 78

```
 1    A    Yes.                                               15:09:39

 2    Q    Okay.  And what's your title?

 3    A    Department head loan servicing.

 4    Q    It looks like the next couple of entries might go

 5         together.  Kelly Allen, ACH authorization.  Something  15:09:54

 6         dot PDF.  Is that a paper document?

 7    A    That's the ACH form that they sign to do the check by

 8         phone, the draft every month.

 9    Q    Who signed that?

10    A    Who signed that?  The customers.                  15:10:18

11    Q    So this would be a PDF of a signed document from

12         either Bruce or Erna Johnson?

13    A    Right, yes, sir.

14    Q    Okay.

15              MR. SCHWINN:   I ask that that be produced.   15:10:29

16              MS. GRIMES:  That wouldn't be produced.  We

17         shred those once they are processed.

18              MR. SCHWINN:  Okay.  Well, then you'll need

19         to -- we'll take this up later, but evidence that

20         has been shredded can be a problem.               15:10:41

21              MS. GRIMES:  Well, actually, I'm going to

22         object to any further questions.  I just sat here

23         and read through this petition.  We're here about

24         a letter.  We've covered the part that covered the

25         letter.  We're not really covering anything that's  15:10:50
```

Page 80

| | | |
|---|---|---|
| 1 | Q | Well, you sent it to this Stonewood Lane, and it | 15:13:17 |
| 2 | | never came back? | |
| 3 | A | Right. | |
| 4 | Q | Or at least the notes don't indicate that it came | |
| 5 | | back, correct? | 15:13:25 |
| 6 | A | Right. | |
| 7 | Q | But the notes don't indicate that it was sent out | |
| 8 | | either, these notes that we have Exhibit 2.  And | |
| 9 | | you're not going to discuss Exhibit No. 2 anymore so | |
| 10 | | I understand. | 15:13:35 |
| 11 | | Exhibit 7 which is the resend of the first | |
| 12 | | letter intended by CFS to be the first letter to that | |
| 13 | | address, Exhibit 8 procedure doesn't cover that | |
| 14 | | letter? | |
| 15 | A | Right.  It covers the first letter. | 15:13:50 |
| 16 | Q | Right.  But Exhibit 8 does not cover the letter | |
| 17 | | Exhibit 7? | |
| 18 | A | No. | |
| 19 | Q | Because it's a different factual scenario why that | |
| 20 | | letter was sent out? | 15:14:01 |
| 21 | A | Right. | |
| 22 | Q | Okay.  And this procedure was issued on May 14, 2012; | |
| 23 | | is that correct?  It says at the bottom. | |
| 24 | A | Yes.  Yes, sir. | |
| 25 | Q | And that's considerably after the letters in this | 15:14:13 |

Page 83

Maxene Weinberg Agency
(800) 640-1949

```
 1        case.  Was there a previous procedure before this      15:14:17

 2        one?

 3    A   This would be -- the procedure I have in front of me

 4        is the only procedure I know.

 5    Q   You don't know of previous procedure before this?      15:14:26

 6    A   We have procedures, but I don't have it in writing.

 7        I don't know specifics about it.

 8    Q   So this is the -- this procedure that we have here is

 9        the first time that CFS put their first letter

10        procedure in writing?                                  15:14:44

11    A   I'm guessing there was other first -- I believe there

12        was other first letter procedures.  This is just an

13        updated one here.

14            MR. SCHWINN:  Counsel, we've requested all

15        the procedures during the relevant time period.        15:15:00

16        This isn't during the relevant time period, so.

17            MS. GRIMES:  This does cover the relevant

18        time period.  The company was a start-up company

19        in 2010.  This is how they were handling it.  They

20        just finally got it in writing in May of 2012.         15:15:14

21            MR. SCHWINN:  So you're representing that

22        there's no prior written procedure before

23        May 14th, 2012?

24            MS. GRIMES:  Yes.  And I can definitely say

25        there is not because as you can see I signed off       15:15:25
```

Page 84

Page 88

```
 1                          CERTIFICATE

 2    STATE OF OKLAHOMA      )
                            )   SS
 3    COUNTY OF TULSA        )

 4

 5          I, Michele Vest, Certified Shorthand Reporter in

 6    and for the State of Oklahoma, do hereby certify that on the

 7    6th day of November, 2012, at the offices of Frank Peterson

 8    Reporting Service, 9 East Fourth Street, Suite 902, Tulsa,

 9    Oklahoma, appeared the above witness, BRYAN R. LOHMEYER, who

10    was by me duly sworn to testify the truth, the whole truth

11    and nothing but the truth in the case aforesaid and that the

12    deposition by him was reduced by me in stenograph and

13    thereafter transcribed under my supervision, and is fully

14    and accurately set forth in the preceding 88 pages.

15          I do further certify that I am not related to nor

16    attorney for any of the parties hereto or otherwise

17    interested in the event of said action.

18          WITNESS my hand this 16th day of November,

19    2012.

20

21          Michele Vest
            State of Oklahoma
22          Certified Shorthand Reporter           Michele Vest
            CSR # 1759                       _____
23    My Certificate Expires Dec. 31, 2012         Michele Vest, CSR

24

25
```