1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| Bruce Albert Johnson, | ) | Case No.:  12-CV-01091-LHK |
| Plaintiff, | ) ) | ORDER GRANTING PLAINTIFF'S |
| v. | ) | MOTION FOR SUMMARY JUDGMENT |
| CFS II, Inc., an Oklahoma corporation, | ) ) | |
| Defendant. | ) ) | |
| | ) | |

Plaintiff Bruce Albert Johnson ("Johnson") brings this action against Defendant CFS II, Inc., a debt collection company ("Defendant" or "CFS"), for violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 *et seq*.

Presently before the Court is Johnson's Motion for Summary Judgment or, In the Alternative, for Summary Adjudication.  ECF No. 41.  On April 18, 2013, the Court held a hearing on this matter.  Having considered the parties' submissions, oral arguments, and the relevant law, the Court GRANTS Johnson's Motion for Summary Judgment.

I.      BACKGROUND

        A.      Factual Background

        Johnson is a 77-year old man alleged to have incurred a consumer credit card debt owed to US Bank in the amount of $5,719.13.  *See* Decl. Bruce Johnson Supp. Mot. for Summ. J. ("Johnson Decl.") ¶ 4, ECF No. 41-2; Def.'s Resp. to Req. Produc., ECF No. 41-6, at Exh. A.  This credit was

1

then assigned to a creditor, Tommy Enterprise, who subsequently hired CFS to collect this debt. Dep. Bryan R. Lohmeyer ("Lohmeyer Dep."), ECF No. 41-8, at 44:1-24.

CFS is a corporation engaged in the business of collecting consumer debts for clients.  *See* Def.'s Resp. to Req. Admis., ECF No. 41-7, at 2-3.  CFS regularly initiates debt collections by sending out a collection notice, or an "original hello letter," to alleged debtors, informing them that they have thirty days to object to the debt.  Lohmeyer Dep. at 17:9-14.  If the alleged debtors do not respond within this time period, CFS commences collections.  *Id.*

On or about September 30, 2010, CFS mailed an "original hello letter," intended for Johnson, to 2032 Stonewood Lane, San Jose, California.  *See* Def.'s Resp. to Req. Produc., ECF No. 41-6, at Exh. A ("Sept. 30, 2010 letter"); Lohmeyer Dep. at Exh. 3 (same).  The September 30, 2010 letter explains that CFS has been authorized to collect $5,719.13 from Johnson based on the debt Johnson allegedly owed to US Bank originally.  *See* Sept. 30, 2010 Letter.  The material portion of the letter states as follows:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid.  If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

*Id.* Johnson declares that he never received this September 30, 2010 letter.  Johnson Decl. ¶ 5. According to Johnson, CFS sent this letter to the wrong address, *see* Mot. at 3, as Johnson never resided at 2032 Lane in San Jose, California, and never received mail at this address, *see* Pl.'s Resp. to Def.'s Special Interrog. Nos. 11 & 13.

After sending the September 30, 2010 letter, CFS sought unsuccessfully to contact Johnson by telephone.  CFS's collection log shows that, on January 17, 2011, an employee of CFS placed a call to a "wrong number" and learned from the person who answered the phone that it was the second call the party received for the "wrong Bruce A. Johnson."  *See* Collection Log at 6.  In addition, on February 23, 2011, the collection log shows that CFS learned that the Stonewood address, to which CFS sent the September 30, 2010 letter, was "sold to the Morelands" at least four

2

years prior "and the renter in the house is not a Mr. Johnson." Collection Log at 6. Further, on or about March 3, 2011, the collection log indicates that CFS obtained a different address for Johnson in Morgan Hill, California, and learned from Johnson's wife she "knew nothing about this card" and that "they never got any billing" on it. *Id.* at 5-6.

On or about March 4, 2011, CFS "re-sent" the first collection letter to Johnson, though this time to 275 Burnett Avenue SPC 115, in Morgan Hill, California. Lohmeyer Dep., Exh. 6 ("March 4, 2011 letter"); Def.'s Resp. to Req. Produc., Exh. A (same); *see* Lohmeyer Dep. at 41:19-42:5. The March 4, 2011 letter differs from the September 30, 2010 letter in certain respects and, in lieu of the above-cited passage, states as follows:

> To help you identify this debt we have provided above the name and address of the original creditor and other information. If you need more information, just let us know. Also, if you believe this is not your debt, that the amount is wrong, or if there is something else that may make the debt invalid, please tell us you dispute the debt. If you tell us of your dispute within 30 days of your receipt of this letter, we will avoid contacting you until we send written verification of the debt or a copy of any applicable judgment. If you do not tell us you dispute the debt then we will assume the debt is valid.

*Id.* On March 8, 2011, Johnson sent a "validation request letter" from the Morgan Hill address to CFS, requesting that a copy of the debt verification be sent to him. *See* Opp'n at 15.

### B. Procedural History

On March 5, 2012, Johnson filed a Complaint against CFS for alleged violations of the federal Fair Debt Collection Practices Act and California's Rosenthal Fair Debt Collection Practices Act. *See* Complaint ("Compl.") ¶ 1, ECF No. 1. CFS then filed a Motion to Dismiss, which it later withdrew. *See* ECF Nos. 5, 12. On May 3, 2012, CFS filed its Answer to Johnson's Complaint, ECF No. 13, which CFS then amended on June 7, 2012. *See* ECF Nos. 13, 18.

Johnson filed the instant Motion for Summary Judgment, or In the Alternative, Summary Adjudication on January 31, 2013. *See* ECF No. 41-1 ("Mot."). CFS filed an opposition to the motion on February 14, 2013, *see* ECF No. 43 ("Opp'n"), to which Johnson filed a reply on February 18, 2013, *see* ECF No. 45 ("Reply").

## II. LEGAL STANDARD

Case No.: 12-CV-01091-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id*. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Celotex Corp.*, 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party has satisfied its initial burden of production, the burden shifts to the nonmoving party to show that that there is a genuine issue of material fact. *Id.* at 1103.

Pursuant to Rule 56(g) of the Federal Rules of Civil Procedure, "[i]f the court does not grant all the relief requested by the [summary judgment] motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). This subdivision "becomes relevant only after the court has applied the summary-judgment standard . . . to each claim, defense, or part of a claim or defense, identified by the motion." Advisory Comm. Notes (addressing Fed. R. Civ. P. 56(g)). "Rule 56(g) allows a court to grant partial summary judgment, thereby reducing the number of facts at issue in a trial." *Nat'l Union Fire Ins. Co. of Pittsburgh,*

4

*PA v. Ready Pac Foods, Inc.*, 782 F.Supp.2d 1047, 1051-1052 (C.D. Cal. 2011) (citing Fed. R. Civ. P. 56(g)).

**III.     ANALYSIS**

Johnson moves for summary judgment alleging that CFS's March 4, 2011 collection letter violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692e(10), 1692g(a)(3), 1692g(a)(4), and 1692g(a)(5), by failing to include statutorily required validation notices and disclosures.  Mot. at 5.  In addition, Johnson moves for summary judgment on the basis that CFS's March 4, 2011 letter violates the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788.17.

In the alternative, Johnson moves for summary adjudication pursuant to Rule 56(g) of the Federal Rules of Civil Procedure.  Specifically, Johnson seeks summary adjudication of the following issues: (1) that Johnson is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is defined by California Civil Code § 1788.2(h); (2) that CFS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and California Civil Code § 1788.2(c); and (3) that the debt being collected by CFS was a "debt" as that term is defined by 15 U.S.C. § 1692a(5), and a "consumer debt" as that term is defined by California Civil Code § 1788.2(f).  *See* Notice of Mot. and Mot. for Summ. J., ECF No. 41.

CFS opposes Johnson's Motion for Summary Judgment.  In its opposition brief, CFS argues that there are two triable issues of fact presented by this case: (1) whether Johnson received CFS's "original hello letter" dated September 30, 2010; and (2) regardless of receipt by Johnson, whether the September 30, 2010 letter constitutes the initial collection letter in this case, thereby fulfilling CFS's statutory requirements.  Opp'n at 2.  CFS does not dispute any of the issues for which Johnson seeks summary adjudication.  *See* Opp'n at 1-11; Reply at 5.

For the reasons stated herein, the Court GRANTS Johnson's Motion for Summary Judgment.

**A.     Fair Debt Collection Practices Act**

The Fair Debt Collection Practices Act ("FDCPA") "is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually

5

1   exists." *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).  Congress enacted the

2   FDCPA to "eliminate the recurring problem of debt collectors dunning the wrong person or

3   attempting to collect debts which the consumer has already paid." *Swanson v. Southern Oregon*

4   *Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (per curiam) (citing S. Rep. No. 382, 95th

5   Cong.2d Sess. 4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699).

6       In order to establish a violation of the FDCPA, there are three threshold requirements: (1)

7   the plaintiff targeted by the collection activity must be a "consumer" as defined in 15 U.S.C.

8   § 1692a(3); (2) the defendant must be a "debt collector" as defined in 15 U.S.C. § 1692a(6); and

9   (3) the defendant must have committed some act or omission in violation of the FDCPA.  *See*

10  *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009)

11  (citing, as an example, *Withers v. Eveland*, 988 F. Supp. 942 (E.D. Va. 1997)).  During the hearing

12  on this motion, CFS conceded that the first two requirements are satisfied.  Thus, the only

13  remaining dispute is whether CFS committed some act or violation of the FDCPA.

14          **1.      The FDCPA's Validation Notice Requirements**

15      Section 1692g(a) of the FDCPA provides that, "[w]ithin five days after the initial

16  communication with a consumer in connection with the collection of any debt," a debt collector

17  must send the debtor a written notice containing, among other things:

18          a statement that unless the consumer, within thirty days after receipt of the notice,
        disputes the validity of the debt, or *any portion thereof*, the debt will be assumed to
19          be valid by the debt collector.

20  15 U.S.C. § 1692g(a)(3) (emphasis added).  The written notice must also contain:

21
22          a statement that if the consumer notifies the debt collector *in writing* . . . that the
        debt, or *any portion thereof*, is disputed, the debt collector will obtain verification of
23          the debt . . . and a copy of such verification . . . will be mailed to the consumer.

24  15 U.S.C. § 1692g(a)(4) (emphasis added).  Furthermore, the written notice must include:

25          a statement that, upon the consumer's written request within the thirty-day period,
        the debt collector will provide the consumer with the name and *address* of the
26          original creditor, if different from the current creditor.

27  15 U.S.C. § 1692g(a)(5) (emphasis added).  Paragraphs 3 through 5 of section 1692g(a)

28  contain "the validation notice" requirements as they include "the statements that inform the

6

1  consumer how to obtain verification of the debt and that he has thirty days in which to do

2  so." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353-54 (3rd Cir. 2000).

3      In the Ninth Circuit, "the impact of language alleged to violate section 1692g is

4  judged under the 'least sophisticated debtor' standard." *Swanson*, 869 F.2d at 1225.  If a

5  court finds "that the least sophisticated debtor would likely be misled by the notice which

6  [the debtor] received from [the debt collector], [a court] must hold that the credit service

7  has violated the Act." *Id.*

8              **2.    CFS's March 4, 2011 Collection Letter**

9      Johnson argues that the March 4, 2011 letter, being the first written notice he received from

10  CFS, fails to comply with the validation notice requirements set forth in 15 U.S.C. § 1692g(a)(3),

11  15 U.S.C. § 1692g(a)(4), and 15 U.S.C. § 1692g(a)(5).  Specifically, Johnson contends that CFS's

12  March 4, 2011 letter violates the FDCPA by: (1) misrepresenting Johnson's right to dispute the

13  debt; (2) misrepresenting Johnson's right to obtain verification of the debt; and (3) misrepresenting

14  Johnson's right to obtain the name and address of the original creditor.  *See* Mot. at 5.

15      The Court agrees with Johnson that the March 4, 2011 letter fails to comply with the

16  validation notice requirements set forth in Section 1692g.  Although the March 4, 2011 letter is

17  similar to the September 30, 2010 letter, it suffers from multiple deficiencies.  First, it fails to

18  inform Johnson that he must dispute the debt "in writing" in order to preserve his right to receive

19  verification of the debt, as required by 15 U.S.C. § 1692g(a)(4).  *Compare* 15 U.S.C.

20  § 1692g(a)(4), *with* March 30, 3011 letter; *see also Camacho v. Bridgeport Financial Inc.*, 430

21  F.3d 1078, 1081 (9th Cir. 2005) (stating that "[t]he plain meaning of § 1692g is that debtors can . . .

22  trigger the rights under subsections (a)(4) and (a)(5) only through written dispute.").  Second,

23  contrary to 15 U.S.C. §§ 1692g(a)(3) and 1692g(a)(4), the March 4, 2011 letter fails to inform the

24  "least sophisticated customer" that a portion of the debt may be disputed.  *Compare* 15 U.S.C.

25  § 1692g(a)(3) (requiring a statement alerting the consumer that he or she may "dispute[] the

26  validity of the debt, or any portion thereof . . . ."), *and* 15 U.S.C. § 1692g(a)(4)(same), *with* March

27  4, 2011 letter (stating only, "if you believe this is not your debt, that the amount is wrong, or if

28  there is something else that may make the debt invalid, please tell us you dispute the debt[.]"); *see*

7

*also Baker*, 677 F.2d at 778 ("Congress clearly required the notice to inform the debtor that he could dispute any portion of the debt.").  Third, the March 4, 2011 letter does not contain the notice required by Section 1692g(a)(5) because it does not inform Johnson that, "upon [his] written request within the thirty day period, [CFS] will provide [Johnson] with the name and *address* of the original creditor."  15 U.S.C. § 1692g(a)(5) (emphasis added).  Rather, the March 4, 2011 letter states only that it "ha[s] provided . . . the . . . address of the original creditor and other information," without actually doing so.  *See* March 4, 2011 letter.[1]

At the hearing on this matter, CFS conceded that the March 4, 2011 letter fails to comply with the FDCPA.  Rather, CFS contends that the *September 30, 2010* letter complied fully with the validation notice requirements of the FDCPA, and that, due to this letter, CFS had no further obligation to ensure that its subsequent letters complied with the FDCPA.  *See* Opp'n at 5.  Johnson does not dispute that the September 30, 2010 letter complied with Section 1692g(a)'s validation notice requirements.  Reply at 6.  Instead, Johnson maintains that he never received this September 30, 2010 letter because it was not sent to his correct mailing address.

In *Pressley v. Capital Credit & Collection Service, Inc.*, 760 F.2d 922 (1985) (per curiam), the Ninth Circuit held that, where "[i]it is clear" that a debtor has already received proper notification of a debt as required by the FDCPA such that there is nothing in the notice or the debt collector's actions that could be construed as "abusive" or "false, deceptive, or misleading," as prohibited by Section 1692e, "[n]o useful purpose would be served by repetition of a formal warning in such a follow up notice to a debtor."  *Id*. at 925-926.  In contrast to *Pressley*, the parties here dispute whether Johnson received CFS's September 30, 2010 letter and thus had prior notice of his rights and obligations.  In addition, the parties dispute whether the September 30, 2010 letter complies with the FDCPA, even if Johnson never received it, simply because CFS sent the letter.

---

[1] In addition, Johnson contends that the March 4, 2011 letter's misrepresentation of the right to obtain a copy of the debt verification or judgment, the right to obtain the name and address of the original creditor, and the obligation to request information in writing in order to preserve his rights under the FDCPA violates 15 U.S.C. §§ 1692e and 1692e(10).  *See* Mot. at 17-18.  Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means" to collect a debt.  In addition, Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Case No.: 12-CV-01091-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

a.       **Whether CFS Sent the September 30, 2010 Letter to Johnson**

The question of whether CFS sent the September 30, 2010 letter to Johnson is "material" because, if properly sent and received, this letter would constitute a valid initial "written notice," thereby demonstrating CFS's compliance with the FDCPA.  *See* 15 U.S.C. § 1692g(a); *Anderson*, 477 U.S. at 248.

Johnson asserts that he never received the September 30, 2010 letter because CFS sent this letter to the wrong address.  Mot. at 11.  To support this assertion, Johnson provides his own declaration stating that the March 4, 2011 letter was the first letter he received from CFS regarding the unpaid debt allegedly owed to US Bank.  Johnson Decl. ¶ 5.  Johnson also provides Responses to Special Interrogatories in which Johnson claims that he never resided at 2032 Stonewood Lane in San Jose, California, and never received mail at this address.  Pl.'s Resp. to Def.'s Special Interrog. Nos. 11 & 13.

In addition, Johnson submits the deposition testimony of Bryan Lohmeyer, a CFS employee, which further supports Johnson's claim that he never received the September 30, 2010 letter.  Lohmeyer testified that, when CFS realized that it had identified "the *right* Bruce Johnson," it was going to "resend the first letter."  Lohmeyer Dep. at 41:3-6 (emphasis added).  Lohmeyer further testified that "it was CFS's intent that . . . [the March 4, 2011 letter] was the first letter to [the correct] Bruce Johnson."  *Id.* at 41:19-42:5 (Q: "So when this Exhibit 6 [March 4, 2011] letter was sent out it was CFS's intent that this was the first letter to Bruce Johnson not that you got the right Bruce Johnson?" A: "That we have the right party, yes.").

Given Johnson's declaration, discovery responses, an Lohmeyer's deposition testimony, the Court finds that Johnson has met his burden of showing that there is an absence of evidence to support CFS's case.  *See Celotex Corp.*, 477 U.S. at 324-25.  Consequently, CFS bears the burden of designating "specific facts [which] show[] that there is a genuine issue for trial."  *Id.* at 324.

To carry CFS's burden of showing that a triable issue of fact exists as to Johnson's receipt of the September 30, 2010 letter, CFS argues in its opposition that Johnson does not attest to any lack of affiliation with the address to which the September 30, 2010 Initial Letter was sent.  Opp'n at 4.  This argument is rebutted by Johnson's Responses to Defendant's Special Interrogatories,

9

United States District Court
For the Northern District of California

1    introduced during the hearing on this motion, in which Johnson specifically stated that he never

2    resided at the 2032 Stonewood Lane address and never received mail there.  *See* Pl.'s Resp. to

3    Def.'s Special Interrog. Nos. 11 & 13.

4          In further support of CFS's claim that a triable issue of fact exists for trial, CFS alleges that

5    Johnson responded to CFS's September 30, 2010 letter by sending a March 8, 2011 response back

6    to CFS, thereby demonstrating that Johnson received the September 30, 2010 letter.  *Id.* at 4.

7    However, contrary to CFS's allegation, nothing in Johnson's March 8, 2011 letter suggests that this

8    letter was sent in response to CFS's September 30, 2010 letter.  *See* Opp'n at 15.  Indeed,

9    Johnson's March 8, 2011 letter may very well have been a response to CFS's March 4, 2011 letter,

10   as Johnson sent the March 8, 2011 response from his Morgan Hill address, which was the address

11   set forth in CFS's March 4, 2011 letter.  *Id.*  Likewise, CFS does not explain why a reasonable

12   juror would find it more probable that Johnson sent the March 8, 2011 letter in response to the five-

13   month old September 30, 2010 letter, rather than to the more recent March 4, 2011 letter.  Thus,

14   even "drawing all reasonable inferences in the light most favorable to" CFS, a reasonable trier of

15   fact would likely conclude that Johnson's March 8, 2011 letter was in response to CFS's March 4,

16   2011 letter, rather than to the September 30, 2010 letter.  *See Celotex*, 477 U.S. at 321; *Anderson*,

17   477 U.S. at 248.  Accordingly, Johnson's March 8, 2011 response is not probative as to whether

18   Johnson received CFS's September 30, 2010 letter.  *See Anderson*, 477 U.S. at 248; *see also*

19   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that, to

20   carry its burden in opposing summary judgment, the non-moving party "must do more than simply

21   show that there is some metaphysical doubt as to the material facts.") (internal quotation marks and

22   citations omitted).

23         Finally, CFS argued during the hearing that its collection call log shows that CFS had the

24   correct phone number for Johnson's wife, and thus must have sent the September 30, 2010 letter to

25   the correct address as well, because both types of information were connected to the original credit

26   card account.[2]  However, the collection log also shows that, months prior to communicating with

27   _____

28   [2]  At the hearing on Johnson's Motion for Summary Judgment, counsel for CFS appeared by
     telephone.  Consequently, after CFS cited to the collection log in support of CFS's case, counsel

Case No.: 12-CV-01091-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Johnson's wife, CFS was placing calls to "wrong number[s]" that were not connected to the correct Bruce A. Johnson. *See* Collection Log at 6 (showing that a call placed on January 17, 2011 was placed to the "wrg bruce a Johnson . . . add and ssn did not verify"). In addition, on February 23, 2011, the collection log shows that CFS learned that the Stonewood address, to which CFS sent the September 30, 2010 letter, was "sold to the Morelands" at least four years prior "and the renter in the house is not a Mr. Johnson." Collection Log at 6. Further, on or about March 3, 2011, the collection log indicates that CFS obtained an address for Johnson in Morgan Hill, California, which was different than the address to which they sent the September 30, 2010 letter. *Id.* at 5-6. Finally, the collection log indicates that Johnson's wife informed CFS that they knew nothing about the credit card and never received any billing for it. Based on this evidence, even drawing all reasonable inferences in the light most favorable to CFS, it does not appear that a reasonable trier of fact would likely conclude that CFS sent the September 30, 2010 letter to Johnson's correct address and that he received this letter.

Accordingly, the Court finds that CFS has failed to show that a genuine dispute of material fact exists as to whether Johnson received the September 30, 2010 letter because CFS sent it to the wrong address.

> **b.     Whether the September 30, 2010 Letter Complies with the FDCPA Because it was Sent Properly**

CFS also contends that, "regardless of whether the September 30, 2010 Initial Letter was mistakenly sent to the wrong address," this letter is still compliant with the FDCPA because "Section 1692g(a) is clear that notice is only required to be 'sent' to a debtor." Opp'n at 6. Johnson disputes that sending a written notice to just any address, regardless of whether it is the correct address, suffices for purposes of the FDCPA. Rather, Johnson asserts that the FDCPA validation notice must be sent *to the consumer* to be effective. Reply at 4.

Section 1692g(a) requires a debt collector to "send the consumer a written notice" complying with validation notices and disclosures as set forth in 15 U.S.C. § 16926(a)(1)-(5). In *Mahon v. Credit Bureau of Placer County*, 171 F.3d 1197 (9th Cir. 1999), the Ninth Circuit held

for Johnson—who appeared in person—provided a copy of the log to the Court. Neither party objected to the admissibility of this evidence. *See* Fed. R. Civ. P. 56(c).

Case No.: 12-CV-01091-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

that "[S]ection 1692g(a) requires only that a Notice be 'sent' by a debt collector," and the debt

collector "need not establish actual receipt by the debtor." *Id.* at 1201. "Under the common law

Mailbox Rule, 'proper and timely mailing of a document raises a rebuttable presumption that it is

received by the addressee.'" *Id.* at 1202 (quoting *Anderson v. United States*, 966 F.2d 487, 491

(9th Cir. 1992)). Consequently, despite the fact that the debtors in *Mahon* claimed that they never

received the Notice, the Ninth Circuit concluded that, based on the evidence in the record which

failed to present a genuine dispute of any material fact, that Notice was sent to the debtors and

received shortly thereafter. In light of this case, CFS contends that "[c]learly[] the letter of

September 30, 2010 was 'sent' within the meaning of Section 1692g(a) and as defined by the

FDCPA." Opp'n at 8.

   However, despite *Mahon*, some federal courts have recognized that sending a validation

notice to an *inaccurate* mailing address does not serve to inform debtors of their rights or meet the

requirements set forth under 15 U.S.C. § 1692g(a). *See, e.g.*, *Kim v. Gordon*, No. 10-1086, 2011

WL 3299813 (D. Or. Aug. 2, 2011) ("Defendants cite no authority, and I am aware of none,

standing for the proposition that sending a validation notice labeled with an incomplete mailing

address serves to inform debtors of their rights or meets the requirements set forth under 15 U.S.C.

§ 1692g(a)."); *see also Johnson v. Midland Credit Mgmt. Inc.*, No. 05-1094, 2006 WL 2473004,

*12 (N.D. Ohio Aug. 24, 2006) ("If debt collectors could satisfy the FDCPA by merely sending

validation notices to any address, valid or invalid, it would not serve to inform debtors of their

rights, and would constitute an abusive debt collection practice.") (internal quotation marks and

citation omitted).

   Given that Congress enacted the FDCPA, in part, "to eliminate abusive debt collection

practices by debt collectors," 15 U.S.C. § 1692(e), the Court finds it doubtful that a debt collector

can comply with the FDCPA's requirement that written notice be "sen[t] [to] the *consumer*," *see* 15

U.S.C. § 1692g(a) (emphasis added), when the debt collector sends a validation notice letter to an

incorrect address and subsequently learns that the consumer did not receive this improperly sent

letter. Even in *Mahon*, the Ninth Circuit indicated that evidence which demonstrates that a

validation notice letter has been returned to a debt collector as undeliverable may rebut the

United States District Court
For the Northern District of California

presumption that notice sent to a debtor is received shortly thereafter.  *See Mahon*, 171 F.3d at 1202.

The Court thus agrees with the federal courts that have found that, if a debtor rebuts the presumption of proper delivery by showing that notice was sent to an incorrect address or returned as undeliverable, the language and purpose of the FDCPA require further action by a debt collector.  *See, e.g.*, *Johnson v. Midland Credit Mgmt. Inc.*, 2006 WL 2473004, *13 (holding that, "where the debtor rebuts the presumption of delivery by showing the notice was sent to an incorrect address and returned as undeliverable, the plain language and purpose of the FDCPA requires additional action by the debt collector to send a notice reasonably calculated to reach the consumer."); *see also id.* at *12 ("[W]hile the plain language of the statute does not require the debt collector to ensure actual receipt of the validation notice, the plain language does require the debt collector to send the validation notice to a valid and proper address where the consumer may actually receive it.  If the debt collector knows the validation notice was sent to the wrong address, the debt collector has not complied with the plain language of the statute.").  Although *Mahon* and *Johnson* refer specifically to mail that is returned as undeliverable, the plain language and purpose of the FDCPA presumably requires additional action by a debt collector if a debt collector otherwise learns that its validation notice was not sent properly to a consumer.

Here, Johnson has introduced evidence which rebuts the presumption that CFS sent the September 30, 2010 letter properly and was thus received shortly thereafter.  Indeed, CFS's own collection log, as well as the deposition testimony by CFS's own employee, show that CFS learned that CFS sent the September 30, 2010 letter to an address at which Johnson did not live or rent, and that this letter was not received by the correct Bruce A. Johnson.  *See* Collection Log at 6 (showing that CFS learned that the Stonewood address, to which it sent the September 30, 2010 letter, was "sold to the Morelands" at least four years prior "and the renter in the house is not a Mr. Johnson."); *see also* Lohmeyer Decl. at 42:1-5 (testifying that CFS re-sent the first letter upon verification that "now they've got the right Bruce Johnson.").  Moreover, CFS does not allege that the September 30, 2010 letter was forwarded to the correct address by the Post Office or that CFS got a postcard notice of Johnson's new address.  Nor does CFS contend that the letter must have

13

Case No.: 12-CV-01091-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

been delivered because it was not returned as undeliverable.  Thus, CFS has failed to rebut the evidence indicating CFS's awareness of Johnson's non-receipt of the September 30, 2010 letter.

Given the dearth of evidence supporting CFS's position that it sent Johnson the September 30, 2010 letter properly, "the plain language and purpose of the FDCPA requires additional action" by CFS to "send a notice reasonably calculated to reach" Johnson that complied with all the requirements under FDCPA.  *Id.*  Therefore, CFS had the obligation to send Johnson another fully compliant letter.  Because the March 4, 2011 letter did not comply with the FDCPA, *see* Part III.A.2, CFS is liable for violating the FDCPA.

In conclusion, Johnson has satisfied his burden of establishing that there is an absence of a genuine disputed issue of material fact with regard to his claim that Defendant statutorily violated the FDCPA. The Court concludes that Johnson is entitled to prevail as a matter of law.  Therefore, the Court GRANTS Johnson's Motion for Summary Judgment based on violation of the FDCPA.

### B.    California Rosenthal Fair Debt Collection Practices Act

Johnson also alleges that the CFS violated the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA").  Pursuant to California Civil Code § 1788.17, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of . . . [15 U.S.C. §§] 1692b to 1692j, inclusive."  Cal. Civ. Code § 1788.17.  Here, CFS conceded during the hearing that Johnson is a "debtor" and that it is a "debt collector" within the meaning of California Civil Code § 1788.2(c).

Johnson contends that CFS violated § 1788.17 for the same reasons set forth in connection with his FDCPA claims discussed above.  Mot. at 18.  Specifically, Johnson contends that CFS's March 4, 2011 letter violated Sections 1692e, 1692e(10), 1692g(a)(3), 1692g(a)(4), and 1692g(a)(5) of the Federal Debt Collection Practices Act.  Given the Court's finding that CFS violated Sections 1692g(a)(3), 1692g(a)(4), and 1692g(a)(5) of the FDCPA, and the RFDCPA mandates compliance with these precise statutory subsections, the Court holds that CFS also violated the RFDCPA.  Thus, the Court GRANTS Johnson's Motion for Summary Judgment based on violating the RFDCPA.

### C.    Statutory Damages

Case No.: 12-CV-01091-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### 1.    Damages under the FDCPA

Johnson argues that, because CFS committed multiple violations of the FDCPA, the Court should award Johnson $1,000, the maximum statutory damage award available under the FDCPA. Johnson contends that "Courts have . . . awarded the maximum amount even when the violations found were less numerous and egregious than those herein." Mot. at 18 (citing *Riveria v. MAB Collections*, 682 F. Supp. 174 (W.D.N.Y. 1988), and *Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995), both of which awarded the debtor $1,000).

In determining whether part or all of the $1,000 statutory damages shall be awarded, a court generally is to consider: "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). In awarding damages in *Riveria v. MAB Collections*, for example, the district court concluded that the maximum statutory damages were appropriate because the flawed validation clause "appear[ed] on every debt collection letter sent out" by the debt collector, and it was clear that the debt collector was "intentionally circumventing the purpose of the [FDCPA] by 'hiding' the notice on the reverse of its form." *Riveria*, 682 F. Supp. at 179. In contrast, Johnson presents no evidence in this case indicating that CFS persistently sends out deficient debt collection notices or that CFS sent the March 4, 2011 letter in an attempt to intentionally circumvent the purpose of the FDCPA. Rather, it appears more likely that CFS made a mistake. In addition, Johnson does not submit any evidence regarding any actual damages he incurred as a result of CFS's noncompliance with the FDCPA. Accordingly, the Court does not find that an award of the maximum possible statutory damages is appropriate in this case. Rather, the Court finds that $700.00 is a fair and just penalty to CFS. Moreover, the Court awards attorney's fees. *See* 15 U.S.C. § 1692k(a)(3).

### 2.    Damages Under the RFDCPA: Cal. Civil Code § 1788.17

Johnson also seeks statutory damages for CFS's violation of California Civil Code § 1788.17, which is remedied by the statutory damages provision of 15 U.S.C. § 1692k(a)(2)(A). *See* Cal. Civil Code § 1788.17 ("Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of

Case No.: 12-CV-01091-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1   Sections 1692b to 1692j . . . and shall be subject to the remedies in Section 1692k of, Title 15 of

2   the United States Code.").  Given the Court's finding that CFS violated California Civil Code

3   § 1788.17 for the same reasons that it violated the FDCPA—CFS's failure to comply with 15

4   U.S.C. § 1692g—the Court finds that the same damages award provided pursuant to 15 U.S.C.

5   § 1692k(a)(2)(A) is appropriate here.  Accordingly, the Court awards $700.00 in damages for

6   CFS's violation of California Civil Code § 1788.17.  *See Morisaki v. Davenport, Allen & Malone,*

7   *Inc.*, No. 09-0298, 2010 WL 3341566, *3 (E.D. Cal. Aug. 23, 2010) (noting that "[s]tatutory

8   damages may be awarded cumulatively under both [the FDCPA and RFDCPA").

9           **3.      Statutory Penalty Under the RFDCPA: Cal. Civil Code § 1788.30(b)**

10          California Civil Code § 1788.30 states that any debt collector who fails to comply with any

11  provision is "liable to that debtor . . . in an amount equal to the sum of any actual damages

12  sustained by the debtor as a result of the violation."  Cal. Civ. Code § 1788.30(a).  As Johnson

13  presents no evidence of actual damages, a penalty is not appropriate under Section 1788.30(a).

14          In addition, Section 1788.30(b) states that "[a]ny debt collector who willfully and

15  knowingly violates this title with respect to any debtor shall, in addition to actual damages

16  sustained by the debtor as a result of the violation, also be liable to the debtor . . . for a penalty . . .

17  which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars

18  ($1,000)."  Cal. Civ. Code § 1788.30(b).  However, Section 1788.30(b) provides little guidance in

19  regard to what factors the Court should consider in making such an award.  Although the plain

20  language of the statute discusses "willful" and "knowing" violations, there is little evidence that

21  CFS intentionally sent Johnson a deficient letter.  As Lohmeyer testified during his deposition,

22  when CFS realized that they had "the right Bruce Johnson," CFS intended to "resend the first letter

23  . . . with a validation notice on it."  Lohmeyer Dep. 41:1-8.  Indeed, the collection log from March

24  4, 2011 states CFS "resent 1st letter via US Mail."  Collection Log at 5.  Therefore, while CFS

25  erred in sending an inadequate letter to Johnson, it does not appear that CFS did so in an effort to

26  be "abusive, deceptive, or unfair."  *See* 15 U.S.C.§ 1692.  Given the lack of evidence regarding any

27  damages to Johnson and the limited evidence supporting a determination that CFS willfully and

28

**United States District Court**
For the Northern District of California

16

knowingly failed to comply with the validation notice requirements, the Court finds that a statutory award of $100.00 is adequate to penalize CFS for its violation.

### 4.   Treble Damages Pursuant to California Civil Code § 3345

Finally, Johnson requests an award of treble damages pursuant to California Civil Code § 3345 because CFS knew or should have known that its conduct was directed toward a senior citizen.  Section 3345 provides that, whenever a court is authorized to impose a fine, penalty, or remedy subject to the fact finder's discretion in order to "punish or deter," a court "shall consider all of the following factors, in addition to other appropriate factors, in determining the amount of fine, civil penalty or other penalty, or remedy to impose[:]"

> (1) Whether the defendant knew or should have known that his or her conduct was directed to one or more senior citizens or disabled persons.
>
> (2) Whether the defendant's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a primary residence, principal employment, or source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person.
>
> (3) Whether one or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

Cal. Civil Code § 3345.  "Whenever the trier of fact makes an affirmative finding in regard to one or more of the following factors, it may impose a fine, civil penalty or other penalty, or other remedy in an amount up to three times greater than authorized by the statute."  *Id.*

Here, the evidence indicates that CFS knew that its conduct was directed at a vulnerable senior citizen.  Specifically, CFS's collection log shows that, when the CFS employees were attempting to reach Johnson, they were looking for someone who was at least 75 years old.  *See* Collection Log at 6 (noting in the collection log that the person on the answering machine may not be the correct Johnson because the voice "sounds younger than 75 years old"); *see generally* Lohmeyer Dep. at 28:12-19 (explaining that CFS has a database that provides information such as

17

United States District Court
For the Northern District of California

the age of the customer or their birthdate, and that CFS employees use this to make sure that they are contacting the "right person"). In addition, as noted in the collection log, Johnson's wife told a CFS employee that Johnson had a stroke in 2006 and had not been able to make any decisions on his own since that time. Collection Log at 5-6. Collectively, this evidence demonstrates that CFS knew or should have known that its unfair debt collection practices were directed to a vulnerable senior citizen. Accordingly, in order to "punish and deter" CFS, the Court finds it appropriate to treble its award such that CFS shall pay Johnson $5,100.00 in damages.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Johnson's Motion for Summary Judgment. Johnson shall recover $5,100.00 in total damages and costs. If Johnson's counsel wishes to recover attorney's fees, the Court ORDERS that the parties meet and confer by May 15, 2013, to explore resolution of Johnson's attorney's fees request. If the parties are unable to reach a resolution, then Johnson's counsel shall file a motion with supporting documentation by Friday, May 31, 2013. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  April 28, 2013

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No.: 12-CV-01091-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California